UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO. 2:10-cr-20005

       Plaintiff,                              HONORABLE NANCY G. EDMUNDS

-vs-

D-1    UMAR FAROUK ABDULMUTALLAB,

       Defendant.

_____/

## MOTION OF THE UNITED STATES TO ADMIT EVIDENCE

NOW COMES the United States, and for its Motion to Admit Evidence, states the following:

1.    The defendant has been charged in a Superseding Indictment with a number of terrorism-related offenses arising from the attempted bombing of Northwest Airlines Flight 253 on December 25, 2009.

2.    The government hereby moves to admit as evidence at trial expert testimony of an Al Qaeda expert witness, pursuant to Fed. R. Evid. 702; expert testimony of another witness, regarding the meaning of the term "martyrdom," pursuant to Fed. R. Evid. 702; a segment of an Al Qaeda produced video, *America and the Final Trap* pursuant to Fed. R. Evid. 801(d)(2)(E); and a portion of one issue of the Al Qaeda in the Arabian Peninsula magazine *Inspire*.  Further facts and argument in support of each of those items of evidence is set forth in the accompanying brief, filed contemporaneously herewith.

3.    Pursuant to Local Rule 7.1(a)(2)(B), the undersigned did not attempt to confer with the defendant, a self-represented party, in an attempt to gain his concurrence for the relief sought.  Since

he began his *pro se* representation, the defendant has refused to meet with or even speak to the undersigned regarding the case, despite several attempts by government counsel, and at the last in-person meeting, the defendant stated that any further communication with him should be done in writing. Government counsel's previous efforts to speak with the defendant about the case, all of which have been rebuffed, constitute adequate cause for not seeking concurrence under LR7.1.

WHEREFORE, the government prays that the Court grant its motion, and admit as evidence at trial the expert testimony of the Al Qaeda expert, pursuant to Fed. R. Evid. 702; the expert testimony regarding martyrdom, pursuant to Fed. R. Evid. 702; the requested segment of the Al Qaeda produced video, *America and the Final Trap*; and a portion of an issue of *Inspire* magazine.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney,
Eastern District of Michigan


s/ Jonathan Tukel
Assistant U.S. Attorney
Chief, National Security Unit
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9749
Email: Jonathan.Tukel@usdoj.gov

s/ Michael C. Martin
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9670
Email: Michael.C.Martin@usdoj.gov

Dated: September 9, 2011

s/Cathleen M. Corken
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-0206
Email: Cathleen.Corken@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO. 2:10-cr-20005

       Plaintiff,                                  HONORABLE NANCY G. EDMUNDS

-vs-

D-1      UMAR FAROUK ABDULMUTALLAB,

       Defendant.

_____/

BRIEF IN SUPPORT OF MOTION OF THE UNITED STATES TO ADMIT EVIDENCE

INTRODUCTION

       The United States seeks to admit four separate items of evidence.  First the United States seeks to admit expert testimony, pursuant to Fed. R. Evid. 702 as to the structure, organization, targeting, tradecraft and recruitment of Al Qaeda, an organization to which defendant admittedly belonged.  Such expert testimony will be helpful to the trier of fact in establishing that defendant conspired to commit an act of terrorism transcending national boundaries, as charged in Count One of the Indictment.

       Second, the government seeks to introduce expert testimony as to the concept of "martyrdom," a word used by defendant to describe his conduct.  That expert testimony will establish that martyrdom is a widely understood word among its adherents, meaning an act by which a person intentionally seeks, for religious reasons, to kill or injure others while also dying himself.  Understanding that concept will assist the trier of fact in determining the intent element applicable to all eight counts on which defendant will be tried.

       Third, the government seeks to admit three minutes and forty two seconds of an Al Qaeda

produced videotape entitled "*America and the Final Trap*."  The videotape will serve to show defendant's intent to kill others, an element of Counts One and Three of the indictment on which he will be tried, and also will aid in establishing that a conspiracy existed, an element of Count One. The videotape is admissible on a number of grounds, including as an admission by a party opponent, Fed. R. Evid. 801(d)(2)(A), and statements by one or more coconspirators during and in furtherance of a conspiracy, Fed. R. Evid. 801(d)(2)(E).  For the same reasons, the Al Qaeda in the Arabian Peninsula print magazine *Inspire* is admissible against the defendant as well.

<u>ARGUMENT</u>

A.  EXPERT TESTIMONY RELATING TO AL QAEDA IS ADMISSIBLE EVIDENCE

The First Superseding Indictment, on which defendant will be tried, alleges that he traveled to Yemen to become involved in violent jihad on behalf of Al Qaeda, a designated terrorist organization, as part of a conspiracy to commit an act of terrorism transcending national boundaries. See First Superseding Indictment, Common Allegations, ¶ 1; *id.* Count 1.  The government seeks to offer the expert testimony of a published author, researcher at the Center for Strategic and International Studies, thirty-year Central Intelligence Agency veteran, and appointee to a Presidential Commission.  The Al Qadea expert's testimony will focus on the organization of Al Qaeda;  its leadership and hierarchy; its goals; its tradecraft; its targeting; its recruitment; its methods of disseminating its propaganda, including through Al Malahem media (see Argument C, *infra.*); and other points relevant to the trial.

Fed. R. Evid. 702 provides in relevant part that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

thereto in the form of an opinion or otherwise . . ."   In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), while the Supreme Court recognized that under Rule 702 "the evaluation of expert testimony is generally left to juries, the Court emphasized the trial judge's 'gatekeeping' role with respect to expert testimony on scientific issues."   *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*).   *Daubert* applies to all expert testimony, not just scientific testimony.   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

"To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d at 577 (citation omitted).   "Second, Rule 702 requires a proffered expert to testify to 'scientific, technical or other specialized knowledge.'" *Id.* (citation omitted).   "Although there is no single criterion for determining whether a specific scientific methodology is reliable, the *Daubert* Court identified several factors that a district court should consider when evaluating the scientific validity of expert testimony, notably: the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Id.* (citation omitted).   Finally, "in addition to requiring that a proposed expert's testimony be 'reliable,' Rule 702 requires that the expert's testimony assist the trier of fact." *Id.* at 578.   The Sixth Circuit reviews determinations of an expert witness' relevance for an abuse of discretion.   *United States v. Leasure*, 331 Fed. Appx. 370, 375 (6th Cir. 2009).

It is well-established that expert testimony on the organization, structure, and operational methods of terrorist organizations is helpful to the trier of fact, and thus admissible.   For instance, in *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011), one of the defendants, Sabir, argued that

-3-

the district court had erred by allowing expert testimony in his prosecution for terrorism offenses. On appeal, the defendant argued that the expert's "testimony about al Qaeda's history and structure was not helpful because jurors' familiarity with al Qaeda and its leader, Osama bin Laden, could be presumed." *Farhane*, 634 F.3d at 159.  The Second Circuit rejected Sabir's position:

> The argument requires little discussion. We have approved the use of expert testimony to provide juries with background on criminal organizations, notably organized crime families. *See, e.g., United States v. Matera*, 489 F.3d 115, 121–22 (2d Cir.2007). As we explained in *United States v. Amuso,* 21 F.3d 1251 (2d Cir.1994):
>
>> [d]espite the prevalence of organized crime stories in the news and popular media, these topics remain proper subjects for expert testimony. Aside from the probability that the depiction of organized crime in movies and television is misleading, the fact remains that the operational methods of organized crime families are still beyond the knowledge of the average citizen.
>
> *Id.* at 1264. The rationale applies with equal force to terrorist organizations, including al Qaeda.

*Farhane*, 634 F.3d at 159.

The Sixth Circuit has followed a similar rationale in permitting expert testimony regarding terrorist organizations.  In *United States v. Damrah*, 412 F.3d 618 (6th Cir. 2005), the defendant was charged with immigration fraud, for having failed to disclose his memberships in a designated terrorist organization, the Palestinian Islamic Jihad, as well as two other organizations with terrorist affiliations, the Islamic Committee for Palestine and the Afghan Refugee Services.  412 F.3d at 622. Although it is unclear exactly what the witness testified to, it clearly involved activities of the Palestinian Islamic Jihad.  See 412 F.3d at 625 n.4.  The Sixth Circuit affirmed the admissibility of such testimony.  *Id*.

Moreover, under *Farhane*'s rationale that expert testimony is permissible "to provide juries

-4-

with background on criminal organizations, notably organized crime families," 634 F.3d at 159, the Sixth Circuit clearly would uphold the admissibility of expert testimony regarding Al Qaeda on that basis as well.  *See United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) (citation omitted) (expert testimony "regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'").  Thus, the Al Qaeda expert's testimony relating to Al Qaeda should be admitted.

B.   EXPERT TESTIMONY AS TO THE MEANING OF "MARTYRDOM,"
     A WORD DEFENDANT USED TO DESCRIBE HIS ACTIONS, IS
     ADMISSIBLE EVIDENCE

On December 25, 2009, following his receipt of medical treatment at the University of Michigan Hospital, and after he had been interviewed by FBI agents (see R. 84: United States' Brief in Opposition to Defendant's Motion to Suppress Statements at the University of Michigan Hospital at 1-3), personnel at the hospital had to formally admit the defendant, which had not been done earlier in the day.  As part of that procedure, a nurse read standard admission questions to defendant, asking whether he had ever had thoughts of hurting himself or others.  Defendant stated that he had not.  The nurse then asked him specifically whether his desire on the airplane earlier that day had been to harm himself or others.  The defendant responded no, that was martyrdom.  The nurse recorded the defendant's response as "marterdom" in defendant's admission record

In order to explain the complex phenomenon of martyrdom, sometimes referred to as "suicide bombing," the government seeks to offer the testimony of an expert witness.  The expert is a professor of Criminology at a University in Israel, and has been involved with studies of martyrdom bombers, including a study in which a large number of such individuals who failed (either because an individual's explosive device failed, the individual backed out, or the individual

-5-

was arrested before carrying out the bombing) were interviewed.  As a result of the study, researchers learned a number of relevant things about the motives and practices of individuals who agree to engage in martyrdom missions, as well as actions taken in preparation for martyrdom.

The expert's proposed testimony meets all the criteria of Fed. R. Evid. 702.  *See* Argument A, *infra*.  The expert clearly qualifies as an expert by virtue of his training, education, and experience.  His testimony will be as to specialized knowledge, specifically the meaning of martyrdom and the motives and practices of someone engaged in a martyrdom mission.  And clearly the expert's testimony will assist the trier of fact.   While the inner-workings of criminal organizations is generally beyond the knowledge of an average layman, *United States v. Tocco*, 200 F.3d at 419, the meaning of martyrdom and the motivation of someone who by his own admission has engaged in a "martyrdom" operation is surely even less well-known to average jurors.  Yet, as to each count in the indictment, the jury will have to decide whether the defendant acted with intent to commit violent acts on persons and property.  See 18 U.S.C. §§ 2332b(a)(1) and 2332b(a)(2), First Superseding Indictment Count One, having as an element that defendant engaged in conduct which included attempting to kill others on board Flight 253; 18 U.S.C. § 1113, First Superseding Indictment Count Three, having as an element that defendant engaged in conduct which included attempting to kill others on board Flight 253; 18 U.S.C. § 32(a)(2), First Superseding Indictment Count Five, having as an element that defendant wilfully engaged in conduct which was likely to have endangered the safety of Flight 253; 18 U.S.C. § 2332a(a)(2), First Superseding Indictment Count Seven, having as an element that defendant knowingly used and attempted to use a weapon of mass destruction against persons and property within the United States; 18 U.S.C. §§32(a)(8) and 32(a)(1), First Superseding Indictment Count Eight, having as an element that defendant wilfully

sought to destroy and wreck Flight 253; and 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii) and 924(c)(1)(C)(ii), First Superseding Indictment Counts Two, Four, and Six, each having as an element that defendant knowingly used, carried, or possessed a destructive device during and in relation to or in furtherance of a crime of violence.

The expert will testify that martyrdom is an accepted and understood method by which individuals seek to carry out such violent acts, and thus is directly relevant to the intent requirement as to each offense charged.  Thus, the expert's proposed testimony is admissible under Fed. R. Evid. 702.

### C.  VIDEO TAPE OF THE AL QAEDA PRODUCTION "AMERICA AND THE FINAL TRAP" AND THE AL QAEDA IN THE ARABIAN PENINSULA MAGAZINE *INSPIRE* IS ADMISSIBLE EVIDENCE

#### 1.  Contents of the Video Segment at Issue

Finally, the government seeks to admit three minutes and forty two seconds of the Al Qaeda produced video, *America and the Final Trap*[1] and portions of the Al Qaeda in the Arabian Peninsula publication *Inspire*.  Through testimony by the Al Qaeda expert, *see* Argument A, *supra*, the government will establish that *America and the Final Trap* and *Inspire* are produced by Al Malahem media, an Al Qaeda production company, that products of Al Malahem media serve as official statements by Al Qaeda, and thus are unquestionably authentic.  The Al Qaeda expert will explain the reasons Al Qaeda produces Arabic language videos with accurate English language subtitles, as is the case with *America and the Final Trap*.  The expert also will establish that such productions are created by terrorist organizations as part of and in furtherance of their criminal conspiracies, for

---

[1] The total video runs fifty four minutes and fifty two seconds.  The portion which the government seeks to offer is from 47:39 to 51:21 of the video.

-7-

a number of reasons. Those reasons include the goals of terrorizing their targets into fearing that additional attacks will be forthcoming, and to convince their own supporters and possible recruits that the terrorists are successful and are gaining the upper hand.

The three minute and forty two second segment (hereinafter, "the segment") focuses on defendant's attack on Flight 253. The segment states that defendant's ability to gain access to Flight 253 and to detonate his device showed a failure of Western intelligence and law enforcement agencies; that the defendant's mission shows that military power will not provide the United States security against terrorist attacks; that mujahadeen were able to overcome all obstacles; and that the defendant was carrying a package which was undetectable by current technology.

The segment also contains an excerpt of defendant's martyrdom video, in which defendant, with a flag associated with Al Qaeda and an AK-47 assault rifle behind him, speaks in Arabic, explaining his reasons for undertaking his mission. It goes without saying that defendant's statement was recorded prior to his departure on his mission, and thus is clear evidence of his intent as to the charged conduct. Each expert will testify that the portion involving defendant speaking is a "martyrdom video," in which the intended martyr explains his reasons for engaging in such actions; that such videos are recorded by Al Qaeda prior to each martyrdom mission; and the reasons that terrorists organizations record and then release such videos, which are in furtherance of such organizations' ultimate goals.

The segment also contains a statement by Qasim Al-Rimi, a high-ranking Al Qaeda official, relating to "the operation of our brother Umar al-Farouk," which refers to the defendant  The segment ends with a message by Osama Bin Laden, voiced-over an image of a Delta aircraft which itself has defendant's photograph superimposed over it. In the message, which the Al Qaeda expert

-8-

will testify is authentic, Osama Bin Laden stated that he is speaking to President Obama ("from Osama to Obama"), and that if "our message" could be conveyed through words it would not be delivered via airplanes. Bin Laden went on to state that "the message we want to inform you with through the airplane of the hero Umar al Farouk," referring to the defendant by name and with his photograph, is that "America will not dream of security until we live it as a reality in Palestine." Thus, each of the experts will testify, the segment is intended to achieve a number of terrorist goals: it shows that the terrorists are achieving success and cannot be stopped; it venerates the defendant as a hero for engaging in an act of martyrdom; it seeks additional recruits in support of Al Qaeda and martyrdom missions; and it seeks political goals in the United States and elsewhere through intimidation of government and the civilian population.[2] The issue of *Inspire* contains much of the same material, and also contains relevant information regarding methods to make communications secure.

By virtue of being released by Al Malahem media, the segment and *Inspire* are unquestionably authentic. See Fed. R. Evid. 901. Thus, the only question is whether the segment and *Inspire* are otherwise admissible. In fact, the entirety of each is admissible under Fed. R. Evid. 801(d)(2)(E), both to establish the existence of a conspiracy as charged in Count One, and as

---

[2]In this respect, the video expressly tracks the statutory definition of international terrorism. See 18 U.S.C. § 2331 (defining "international terrorism" as activities that involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States; that appear to be intended to intimidate or coerce a civilian population, to influence the policy of a government by intimidation or coercion, or to affect the conduct of a government by mass destruction, assassination, or kidnaping; and which transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate.

statements in the course of and in furtherance of such a conspiracy.[3]

    2.  The Segment of *America and the Final Trap* at Issue
        Falls Within the Scope of Federal Rule of Evidence. 801(d)(2)(E)

In order for a statement to be admitted under Rule 801(d)(2)(E), the offering
party must prove by a preponderance that 'the conspiracy existed, that the
defendant was a member of the conspiracy, and that the coconspirator's
statements were made ''in furtherance of the conspiracy.' The district court
can consider the contents of the statements in making this determination, but
the statements 'must be corroborated by independent evidence.' 'In
reviewing a trial court's evidentiary determinations, this court reviews de
novo the court's conclusions of law, e.g., the decision that certain evidence
constitutes hearsay, and reviews for clear error the court's factual
determinations that underpin its legal conclusions.'

*United States v. Young*, 553 F.3d 1035, 1045 (6th Cir. 2009) (citations omitted).

    A.  Al Qaeda's Activities, Including the Production and Release of *America*
        *And the Final Trap* and *Inspire* Constitutes a Conspiracy

Courts have regularly held that Al Qaeda and its activities constitute a conspiracy for

purposes of Federal Rule of Evidence 801(d)(2)(E). *See, e.g.*, *United States v. Farhane*, 634 F.3d

127, 161-162 (2d Cir. 2011); *In Re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d

93, 138-140 (2d. Cir. 2008). In this regard, it is irrelevant whether or not the conspiracy evidenced

by *America and the Final Trap* or *Inspire* is the same conspiracy charged in Count One (or in fact,

whether a conspiracy is even charged at all). *See United States v. Bowe*, 221 F.3d 1183, 1193 (11th

Cir. 2000) ("[T]he conspiracy that forms the basis for admitting a co-conspirator's out of court

statements need not be the same conspiracy for which the defendant is charged."). Indeed, a co-

conspirator statement may be admitted even if the defendant was not charged with any conspiracy,

---

    [3]Of course, that portion of the segment where defendant delivers his martyrdom
statement is independently admissible against him as an admission by a party opponent. Fed. R.
Evid. 801(d)(2)(A).

or is acquitted of the conspiracy charge.  *See United States* v. *Lara*, 181 F.3d 183, 196 (1st Cir.

1999); *United States* v. *Stratton*, 779 F.2d 820, 829 (2d Cir. 1985) ("[I]t is not necessary that the

Government charge a conspiracy to take advantage of Fed. R. Evid. 801(d)(2)(E)."); *United States*

*v. Breitkrutz*, 977 F.2d 214, 219 (6th Cir. 1992) (declarant need not be indicted for statement to be

admissible); *United States v. Horton*, 847 F.2d 313, 323-324 (6th Cir. 1988) (citation omitted) ("The

mere fact that no conspiracy was charged does not preclude the use of coconspirator hearsay.").

Instead, the Government must show only that the defendant and the declarant are members

of some conspiracy that somehow is "factually intertwined" with the charged offenses.  *See United*

*States* v. *Stratton*, 779 F.2d at 829 (the Government must demonstrate that the conspiracy to which

the defendant and the declarant belong "is factually intertwined with the offenses being tried")

(internal quotations omitted.  In the present case, it is quite obvious that statements made by senior

Al Qaeda leaders, including Osama Bin Laden, praising the "hero Umar al Farouq," with

defendant's photograph superimposed over a Delta aircraft, easily meet the standard of being

factually intertwined with the offenses being tried.  It is further clear that defendant willingly agreed

to have his words used well beyond his active participation in the conspiracy, by filming the

martyrdom portion of the segment at issue prior to his mission.  Such a showing is sufficient to

establish the conspiracy predicate to admission under Fed. R. Evid. 801(d)(2)(E).  And it is quite

clear that the Court may consider the segment of *America and the Final Trap* in determining its

admissibility.  *See* Fed. R. Evid. 104(a); *Bourjaily* v. *United States*, 483 U.S. 171, 180-81 (1987);

*United States* v. *Gigante*, 166 F.3d at 82.

In addition, while "there must be some independent corroborating evidence of the

defendant's participation in the conspiracy," *United States* v. *Tellier*, 83 F.3d 578, 580 (2d Cir.

1996); *see* Fed. R. Evid. 801(d)(2) ("the contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered"), that independent evidence need not itself be admissible. *See* Fed. R. Evid. 104(a) ("the admissibility of evidence shall be determined by the court [which], [i]n making [this] determination[,] is not bound by the rules of evidence"); *Bourjaily* v. *United States*, 483 U.S. at 178. "Admissibility depends on the nature of the statement offered — in particular what objective it sought to advance — and whether the defendant was jointly engaged with the declarant in a conspiracy seeking that objective." *United States* v. *Russo*, 302 F.3d 37, 46 (2d Cir. 2002). And wholly apart from being offered to prove the truth of the matters asserted, Fed. R. Evid. 801(c), the segment is admissible to prove that a conspiracy existed, as alleged in Count One of the First Superseding Indictment.

### B. Defendant Was a Member of the Conspiracy

As noted, the Court may consider all evidence, including the contents of *America and the Final Trap*, in determining whether defendant was a member of the conspiracy. In addition to the contents of the segment, the government will offer independent evidence of a conspiracy. That evidence will include defendant's post-arrest statement, in which he admitted conspiring with others; and physical evidence, including DNA and fingerprints from the unexploded portions of the device, which demonstrate that it was manufactured by someone other than defendant. Those facts will in and of themselves establish that defendant was part of a conspiracy. Moreover, defendant obviously agreed to allow his words to be used in furtherance of the conspiracy through dissemination at a later date, by filming the martyrdom portion of the segment at issue prior to his mission. That portion of the conspiracy was in fact carried out by the release of *America and the Final Trap*.

-12-

C. The Statements in *America And the Final Trap* Were In
   Furtherance of the Conspiracy

Although admissible co-conspirator statements are limited to those made "in furtherance"
of the conspiracy, that requirement encompasses any co-conspirator statement that "reasonably [can]
be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as
enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States* v.
*Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). For example, statements intended to recruit
additional accomplices, which is one of the goals of terrorist videos such as *America and the Final
Trap*, are deemed to be in furtherance of the conspiracy. *See Garlington v. O'Leary*, 879 F.2d 277,
283 (7th Cir.1989) ("Statements that further the objectives of a conspiracy can take many forms,
including statements made to recruit potential coconspirators."); *United States v. Ortiz-Martinez*,
1 F.3d 662, 674 (8th Cir. 1993) (statements made to recruit accomplices are in furtherance of the
conspiracy); *Arias v. Villanueva*, 998 F.2d 1491, 1502 (9th Cir. 1993) (same); *Glenn v. Bartlett*, 98
F.3d 721, 729 (2d Cir. 1996) (same).

Indeed, the requirement that the challenged statement be "in furtherance of" the conspiracy
is satisfied if the statement's objective is "designed to promote or facilitate achievement of the goals
of the conspiracy." *United States* v. *Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). As one of the goals
of the conspiracy was to terrorize civilian populations, which will be established by the Al Qaeda
expert, the mere production and release of *America and the Final Trap*, in which further attacks are
promised, is by definition in furtherance of the conspiracy. *Cf. United States v. Hamilton*, 689 F.2d
1262, 1269-1270 (6th Cir. 1982) (statements need not actually achieve furtherance of conspiracy
if that is their purpose).

In fact, the only argument which defendant can make that the statements were *not* in

-13-

furtherance of the conspiracy is that the conspiracy had ended by the time *America And the Final Trap* was released, due to his arrest.  However, that position is incorrect, both as a matter of law and of fact.  "The acts and declarations of coconspirators, done or made in furtherance of the conspiracy, are admissible against a conspirator whose participation has terminated because of arrest."  *United States v. Marques*, 600 F.2d 742, 750 (9th Cir. 1979).  The conspiracy to commit aircraft attacks against the United States had not ended, as demonstrated, at a minimum, by the contents of *America And the Final Trap* and the 2010 toner cartridge conspiracy by Al Qaeda in the Arabian Peninsula.  In addition, as a factual matter, as the Al Qaeda expert will testify, terrorism conspiracies differ from ordinary criminal conspiracies, in that it is part of the conspiracy to make statements about various members' roles and in fact to publicize some of their roles.  Thus, the statements in *America And the Final Trap* are coconspirator statements by virtue of their being about defendant's mission and being released to the public.  As a result, the statements fall within Fed. R. Evid. 801(d)(2)(E) and are admissible.

CONCLUSION

For the foregoing reasons, the Court should admit (1) the expert testimony of the Al Qaeda expert; (2) the expert testimony regarding martyrdom; and (3) the segment of *America And the Final Trap*; and (4) the portion of *Inspire* magazine.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney,
Eastern District of Michigan

s/ Jonathan Tukel                          s/Cathleen M. Corken
Assistant U.S. Attorney                    Assistant U.S. Attorney
Chief, National Security Unit              211 West Fort Street, Suite 2001
211 West Fort Street, Suite 2001           Detroit, Michigan 48226
Detroit, Michigan 48226                    Phone: (313) 226-0206
Phone: (313) 226-9749                      Email: Cathleen.Corken@usdoj.gov
Email: Jonathan.Tukel@usdoj.gov

s/ Michael C. Martin
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9670
Email: Michael.C.Martin@usdoj.gov

Dated: September 9, 2011

-15-

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 9, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to Anthony Chambers.  I further certify that I have caused a copy of this filing to be delivered and mailed to the defendant, Umar Farouk Abdulmutallab, Register No. 44107-039, Federal Detention Center, East Arkona Road Milan, Michigan.


s/ Lindsay Black_____
Legal Assistant
U.S. Attorney's Office