UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

UMAR FAROUK ABDULMUTALLAB,

    Defendant.
                                         /

Case No. 10-20005

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE [57]**

At a hearing held on September 14, 2011, this matter came before the Court on Defendant's motion for change of venue. Defendant argues that this Court may be unable to seat an impartial jury because of prejudicial pretrial publicity and/or an inflamed community atmosphere. The Supreme Court has drawn a distinction between presumed and actual prejudice for pretrial publicity. *Murphy v. Florida*, 421 U.S. 794 (1975). For the reasons stated below and on the record at the September 14th hearing, prejudice cannot be presumed in this matter. Moreover, because the extensive jury questionnaire and follow-up individual voir dire fashioned by the Court in this matter will probe each prospective juror's exposure to any pretrial publicity, a change of venue is not warranted at this time. Accordingly, Defendant's motion is DENIED as to presumed prejudice and DENIED AS PREMATURE as to actual prejudice.

**I.    Analysis**

The Sixth Amendment affords a criminal defendant the right to a trial by an impartial

jury. Moreover, the United States Constitution establishes that trials are to be held in the district where the offense occurred. *See* U.S. Const., Art. III, § 2, cl. 3 ("The trial of all crimes . . . shall be held in the State where the said crimes shall have been committed"); U.S. Const., Amend. VI (observing that all criminal trials are to be conducted "by an impartial jury of the State and district wherein the crime shall have been committed."). These constitutional mandates yield only "if extraordinary local prejudice will prevent a fair trial." *Skilling v. United States*, ___ U.S. ___, 130 S. Ct. 2896, 2913 (2010).

Fed. R. Crim. P. 21 governs venue transfers in federal court. That rule instructs that:

> (a) For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another court <u>if</u> the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed. R. Crim. P. 21(a) (emphasis added).

The decision to grant a change of venue motion is committed to the trial court's discretion. *United States v. Chambers*, 944 F.2d 1253, 1262 (6th Cir. 1991) (superseded by statute on other grounds).

### A. Presumed Prejudice

The Supreme Court has drawn a distinction between presumed and actual prejudice from pretrial publicity. *Murphy v. Florida*, 421 U.S. 794 (1975). "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). "Where pretrial publicity cannot be presumed prejudicial, the trial court must then determine whether it rises to the level of actual prejudice. The primary tool for discerning actual prejudice is a searching voir dire of prospective jurors." *Id.* at 387

(internal citation omitted).

Here, Defendant asks the Court to presume prejudice from pretrial publicity. A presumption of prejudice, however, "attends only the extreme case." *Skilling*, 103 S. Ct. at 2915. Defendant bears an "extremely heavy" burden to show that pretrial publicity will deprive him of an impartial jury. *Coleman v. Kemp*, 778 F.2d 1487, 1537 (11th Cir. 1985). Reflecting the high bar Defendant must hurdle "[p]rejudice from pretrial publicity is rarely presumed." *Foley*, 488 F.3d at 387.

Defendant's "presumed prejudice" argument rests entirely on the raw number of news articles and television broadcasts that discuss Defendant's charges. This is insufficient. As the Supreme Court explained in *Skilling*:

> Prominence does not necessarily produce prejudice, and jury *impartiality*, we have reiterated does not require *ignorance*.

*Skilling*, 103 S.Ct. at 2914-15 (italics in original) (citing and quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("Jurors are not required to be 'totally ignorant of the facts and issues involved;' 'scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.'"); and *Reynolds v. United States*, 98 U.S. 145, 155-56 (1878) ("'[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who had not some impression or some opinion in respect to its merits.'")).

When considering whether to presume juror prejudice, courts look beyond the sheer amount of pretrial publicity. Rather, a number of factors are considered, including the following.

## 1. Large Size and Diversity of Jury Pool

Courts have considered the "size and characteristics of the community in which the crime occurred." *Skilling*, 130 S. Ct. at 2915. In *Skilling*, a former Enron Chief Executive Officer was charged with offenses related to deceiving investors and others about Enron's performance before its collapse in bankruptcy. Skilling's trial took place in Houston, where Enron is based and where 4.5 million individuals eligible for jury duty resided. The *Skilling* Court concluded that "[g]iven this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Id.* The same is true here.

Other cases have similarly found that the size of the area from which the venire was drawn reduced the likelihood of prejudice. *See Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991) (observing that the size of the metropolitan Washington, D.C. area, with a population of over 3 million, mitigated the potential for prejudice); *Gentile v. States Bar of Nev.*, 501 U.S. 1030, 1044 (1991) (plurality opinion) (finding the likelihood of prejudice diminished where the pool of eligible jurors was over 600,000 individuals).

According to the U.S. Census Bureau data, the population of Detroit and its surrounding suburbs is nearly 4.3 million individuals. *See* http://www.census.gov/2010census. Detroit is the eighteenth largest city in the nation. As in *Skilling*, the defense contention that an impartial jury cannot be found from such a large pool is untenable and is thus rejected.

## 2. Content of Media Reports

When determining whether prejudice should be presumed, the courts also consider whether news reports contained a "confession or other blatantly prejudicial information of

4

the type readers or viewers could not reasonably be expected to shut from sight." *Skilling*, 130 S. Ct. at 2916. Consideration of this factor here also weighs against a change in venue.

The publicity in this case has been largely impartial reporting on the public court proceedings and motions. As in *United States v. Johnson,* much of the publicity in this case has been "primarily descriptive of the indictment . . . and related proceedings." 584 F.2d 148, 154 (6th Cir. 1978). Similar to *Skilling* then, it is thus distinguishable from *Rideau v. Louisiana*, 373 U.S. 723 (1963), where the defendant's broadcast confession "was likely imprinted indelibly in the mind of anyone who watched it." *Skilling*, 130 S. Ct. at 2916.

### 3. Time Lapse Between Precipitating Event and Trial

In weighing whether to apply a presumption of prejudice, the courts also consider the time of the pretrial publicity and whether "trial swiftly followed a widely reported crime." *Skilling*, 103 S. Ct. at 2916. In *Skilling*, the Supreme Court observed that four years had elapsed between Enron's bankruptcy and Skilling's trial. Although there was news coverage throughout this period, "the decibel level of media attention diminished somewhat in the years following Enron's collapse." *Id.* The same is true here where the trial will occur almost two years after the crimes charged occurred. A review of the press coverage of this case shows a peak at the time of the precipitating event and a tappering off, with coverage occurring sporadically when there was a court appearance or filing. For example, as the government points out, there have been a total of 285 printed media reports in the Eastern District of Michigan; 161 of those reports – more than half – occurred in the month following the incident on December 25, 2009.

### 4. Impact on Community

Defendant makes unsupported claims about the impact of this case on the community in urging the Court to presume prejudice. For instance, Defendant contends that "many residents of the State of Michigan are enraged that such an alleged incident occurred not just in their country, but in their home state, near their home city, at the airport that they frequent." (Def.'s Mot. at 3.) In *Skilling*, the defendant's victims were numerous and the community impact of his crimes widespread. *Skilling*, 103 S. Ct. at 2917. Nonetheless, the Supreme Court found that the jury questionnaire and follow-up voir dire were "well-suited" to identifying jurors' connections to Enron. The same measures are being employed here to identify juror prejudices or biases.

Consideration of the above factors convinces the Court that juror prejudice cannot be presumed. Similar venue transfer requests have been denied in other cases "involving substantial pretrial publicity and community impact . . . ." *Skilling*, 103 U.S. at 2913, n.11 (citing the 1993 World Trade Center bombing case, *United States v. Salameh*, No. S5 93 Cr. 180(KTD) (S.D. NY Sept. 15, 1993)). *See also*, terrorism cases, *United States v. Yousef*, No. S12 93 r. 180(KTD) (S.D. NY July 18, 1997), *aff'd*, 327 F.3d 64, 155 (2d Cir. 2003); *United States v. Lindh*, 212 F. Supp. 2d 541, 549-551 (E.D. Va. 2002); *United States v. Moussaoui*, Crim. No. 01-455-A, Doc. Entry 6/25/02 (E.D. Va.). The circumstances present here are markedly different than those in which the Supreme Court has presumed prejudice from pretrial publicity. *See Skilling*, 103 U.S. at 2913-1915 (distinguishing *Rideau; Estes v. Texas*, 381 U.S. 532 (1965); and *Sheppard v. Maxwell*, 384 U.S. 333 (1966)).

**B. Actual Prejudice - Defendant's Motion is Premature**

The Court must also consider whether pretrial publicity rises to the level of actual

prejudice. *Foley*, 488 F.3d at 387. Voir dire is the primary vehicle for ascertaining actual prejudice. *Id.* As the Sixth Circuit observed in *Johnson*,

> The merit of a change of venue motion is most likely to be revealed at voir dire of the potential jurors. Through proper questioning the court can determine the extent of the veniremen's exposure to the publicity and the effect it has had upon them. Exposure to publicity alone does not presumptively deprive the defendant of his right to fair and impartial jurors. Rather, the test is whether any potential juror who has been exposed to publicity can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

584 F.2d at 154 (internal quotation marks and citations omitted).

Here, the Court has fashioned an extensive written questionnaire that will probe each prospective juror's exposure to any pretrial publicity. In addition, each juror will be subject to individual voir dire during which follow-up questions relating to pretrial publicity can be further probed. Through these measures, the Court can determine whether jurors have seen or heard anything about this case, whether they have been affected by it, and whether they can lay aside any preconceived impressions or opinions that they may have formulated. Because the jury questionnaire and voir dire will fully expose any prejudice from pretrial publicity, a change of venue is not warranted at this time.

**II.     Conclusion**

For the above-stated reasons, Defendant's motion for change of venue is DENIED.


			s/Nancy G. Edmunds
			Nancy G. Edmunds
			United States District Judge

Dated:  September 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 14, 2011, by electronic and/or ordinary mail.

			s/Carol A. Hemeyer
			Case Manager